The next case on our calendar is Josephine Smalls Miller v. Suzanne Sutton and others. Thank you. Good morning, Your Honors. May it please the Court, my name is Josephine Smalls Miller. I am the appellant in this case representing myself and I have asked to reserve two minutes for rebuttal. In addition to the matters that have been set forth in my brief, I would like to ask that this Court take judicial notice of the filing of the case called Johnson and Johnson. The reason why I think that this Court should . . . That was filed in . . . In Federal District Court for the District of Connecticut. It was filed on yesterday. The reason why . . . But that was separate from the issues that were before the Court in the motion, the previous motion for judicial notice. There was not a motion for judicial notice, but there was a motion to supplement the record. I do believe that it is important for this panel to consider the allegations in that complaint, because if the events that have occurred even in the last two months is not considered by this Court, then I believe that what you'll be looking at is a very sanitized record . . . . . . of the allegations that I take it . . . the case you're talking about is Miller and somebody . . . is it your law firm? It's you. It's the plaintiff's you. It is me. You're asking us to take judicial notice of allegations that you've made in a different brand new litigation to evaluate the issues relevant to this case, which the District Court considered based on the allegations that were made in this case. Correct. Okay. However, my understanding of the denial of that motion to supplement the record was the court said that they granted the motion, but only if those matters were before the District Court. As I was . . . They're not. The question . . . that's all about Rule 10. This is about basic appellate practice. We are here to review the decision that was made by the District Court with respect to younger abstention. In this case, based on the allegations that were made in this case. I think it is important for this court to take into account, however, the fact that at every stage of this litigation, the District Court refused discovery in the case, even limited jurisdictional discovery, and then concluded that there were not sufficient facts upon which to decide the younger doctrine. As this court well knows, while the younger doctrine is well established, the factual basis for deciding whether younger abstention applies is something that this court would look at de novo. When this court is not privy to all that has continued to happen, as I said, I believe that you're looking at a sanitized view of an ongoing process. I would like to point the court's attention to the Shaw v. Garrison case, where . . . Why wouldn't it be . . . Would it be impermissible in any way for you . . . Your case, this case, Miller v. Sutton, remains pending before the District Court, right? Yes. On a . . . It's just that the District Court, based on the record before it, decided that younger abstention was appropriate. Is there anything that prevents you from going back to the District Court, to Judge Shea, and making a new application to amend this complaint, or just to have him consider various new facts that are relevant to the younger doctrine? Why is it instead appropriate to come to this court and say that rather than did based on the record actually before him, we should make a decision based on completely different allegations in a completely different lawsuit? Your Honor, I'm not asking the court to look at new allegations in a vacuum. What I am saying to this court is that there has been a continuum of conduct that is relevant to the issue of whether or not there has been bad faith exhibited by the defendants in this case with regards to the attorney discipline process. But you see, you're asking us not to review Judge Shea's decision on the record that was before him. You are asking us to create a new record, make in the first instance an analysis of younger abstention based on a different case that no District Court has previously looked at. Well, Your Honor, to respond to your inquiry about why no attempts to go back to the District Court, I did indeed seek to get a stipulation from the defendants to allow this matter to be withdrawn in order to go back to the District Court so that the judge could look at that. There was no agreement. Under the rule 42.1, what was decided . . . I don't understand though, why not withdraw this appeal with prejudice? That wouldn't mean you could never address younger again. You'd go back to the District Court and make a new record and then come back when you've got a new record. This appeal is based on the record before the District Court. That's how it works. That's what Rule 10 of the Federal Rules of Appellate Procedure says. We sit to review decisions that have been made by the District Court based on the record in the District Court, right? Well, but the problem is that . . . We don't find facts. But the problem is that the District Court did not allow a development of the record. Try . . . You can appeal that ruling by the District Court, but you're asking us to add other things in. The fact that he didn't allow discovery is appealable before us, but to look at other cases is beyond our jurisdiction at this point. Well, if that is the decision of this court, then I would accept that. I think what I described was not the decision of this court, but the law as it stands. Otherwise we're not acting as a review court, you see. We're making a nissi prius determination, the court seeing it for the first time, and we can't really do that. If we look at what has occurred to this point, it is my position that there has been sufficient evidence, even though the record is limited, sufficient evidence to show bad faith by the attorney-disciplined action. Why is it bad faith for these disciplinary authorities to act upon referrals that came to them from courts? Remember, we're not asking at this stage of the case whether they actually did anything wrongful. We're asking whether we should make an exception to the usual rule that the way to that are brought in the state system. The exception is based on the extraordinary case where these actions are transparently almost taken in derogation of any kind of duty. What I see are disciplinary authorities that got referrals from presumptively reasonable sources saying that there should be investigations and there should be charges brought, and they brought them. Now, maybe in the end, those charges will not be sustained or should not be sustained, but why is there some obvious bad faith in a disciplinary authority running with a referral that was made to it by, for example, a Connecticut appellate court? I think if your Honors would look at the underlying record of, let's take the referral from the Connecticut appellate court. In their brief, the defendants speak about, quote, problematic behavior on my part that led the appellate court to decide that there should be a referral for further discipline. I'd like to point out to the court just two brief examples of the basis for that referral. One was an instance where the court determined that because a transcript in the case had not been filed, that the matter should be dismissed. Can I interrupt you because, let's assume that the referral orders were erroneous, that the courts that made the referral orders, they were wrong, they shouldn't have done what they did to you, the findings were not justified. Let's assume that. What's wrong then with the committee taking the referral and investigating it? They have to come to a conclusion, right? Your Honor, investigation can be used as a weapon. I believe that there are sufficient facts to show that that is indeed what has happened in this instance. I would point the court to the NAACP versus Button case. In that case, there was a facially neutral statute that appeared to deal with attorney discipline, but the underlying reason for that statute in the case was so that attorneys who were involved in civil rights litigation would feel the sword of Damocles over their necks. What I have argued in the brief and before this court is, that is what the court . . . excuse me, that is what the disciplinary authorities in this case have done. They did that. Investigation is always a sword of Damocles. I agree with you. Under investigation, it's enough to make anyone apprehensive. What you're really saying to us is, the committees should not have pursued it at all. How can we get involved in that? I do think that the court can evaluate. For example, once the referral was made by the Connecticut Appellate Court, a wall-to-wall investigation was then undertaken. What the disciplinary authorities pounced upon were those of my cases that dealt with the issue of civil rights. I think that this court cannot divorce . . . What was the outcome of the investigation? The outcome of the investigation was, with regard to certain of the matters, that the only at the conclusion of that probable cause hearing, did the chief disciplinary counsel decide that she probably had not proven her burden of proof in the case, but she did not withdraw the claim. This is in . . . What happened next? What did the court decide about probable cause? The court . . . That particular claim that proceeded to the probable cause hearing was before a three-member reviewing panel. Which decided what? Which decided that there was a violation, not with regard to those civil rights matters, that disciplinary counsel said that she should not have brought. I'm just having trouble understanding why we should say . . . Because we're not reviewing this even at the end of the case. We're asking whether this exception to ordinary younger abstention should be made, and you're saying we should infer bad faith from the fact that the disciplinary authorities conducted an investigation, proceeded to bring certain charges, actually withdrew some of the charges because they thought that they hadn't established probable cause, and then succeeded in having an independent body find some basis for discipline. Why does that look like bad faith to you? I think Your Honor is mistaken. The charges that I referred to were never withdrawn by the disciplinary counsel, but proceeded through a complete probable cause hearing. But they acknowledged, you're telling me, that they said, well, we don't think we've really got it on those charges, and those charges did not result in discipline. However, if the court . . . But other charges that they brought did. Now, that seems to me like the ordinary operation of a disciplinary or prosecutorial system of any kind, that charges are brought, some of them don't pan out, others of them do, the process works, it reaches a conclusion. Now, you know, maybe there's going to be something to look at when this is all over, but you're asking the district court to intervene ex ante into these disciplinary proceedings on the ground that there's a clear pattern of bad faith in a situation that at least this one looks like, it's hard for me to see what the disciplinary authorities could have done very differently here. I would point, Your Honors, to the case which I've cited, Shaw v. Garrison, which stands for the proposition that an individual should not have to submit to repeated prosecutions, that they shouldn't have to endure specious prosecutions until the end point, especially when it's known in advance that the basis for the prosecution was one that should not have ever been brought. In the instance that we've just referred to . . . That was Mr. Garrison, the district attorney in New Orleans . . . Correct. . . . who was fanatically pursuing some theory about the Kennedy assassination. Correct. Correct. But there are other cases that kind of stand for that same proposition. What the disciplinary authorities and the district court have essentially concluded is just submit to every type of grievance, every type of probable cause hearing that may be brought against you, and in the end, you'll be vindicated. Another example that I'd like to point out to the court, for example, is a referral that was made by a superior court judge where I was actually mistaken. The wrong attorney and the wrong documents were submitted in support of a claim that I had acted improperly. Even though those documents were presented at the local grievance panel level, it was completely ignored. It proceeded to a full probable cause hearing before those charges were found to be false. Are you arguing that you're being singled out for . . . Yes, I am. . . . elective enforcement? Yes, I am. Because you're a black woman who represents black clients, is that your argument? Not just black clients, but because I represent individuals in civil rights matters. I believe that the court could probably agree with me that the current zeitgeist that we have is much like what was in existence back in 1963 when NAACP versus Button was decided. The people who are singling you out are these judges who are making these referrals that turn out to be meritless, but you're saying the disciplinary authorities are singling you out when they respond to these charges because normally when courts refer things to the disciplinary authorities with other attorneys, they just, what, laugh them off? Well, I've given an example in my brief of one individual . . . Christine . . . no, no, come on. I know about that case because I was on the Southern District Grievance Panel when this came up. She got ultimately suspended from practice for seven years. This is not a case where somebody is being treated favorably. Actually, I think that that's not correct. She never served a day of suspension because at the end of the appeals process, the discipline was applied retroactively. The disciplinary authorities in Connecticut did not even move for reciprocal discipline. The delay was because all of this thing was under appeal. This thing was ferociously fought through. Christine Peters went through years of process that dwarf the kind of things you're talking about before the Southern District, before this court. The litigation went on for years. Eastern District too. Correct. Don't say she wasn't disbarred. She was disbarred in the Eastern District. I signed the order and she was out. It had to be a two-year period at least before she ultimately got reinstated. What I'm saying to the court is with regard to the courts and the disciplinary authorities in the state of Connecticut, they treated her with kid gloves. She has never served a day of suspension and in fact, once the disciplinary authorities moved at the end of the seven years for reciprocal discipline, the judge decided she had suffered enough so that he would not even impose reciprocal discipline. Was she investigated during those seven years that she was continuing to practice? No. You know that? There is nothing in the record to show that. I will submit to this court that I have been subjected to three probable cause hearings in the space of about 14 months. At the last one, which was held December 1st of 2016, I subpoenaed the parties at the disciplinary authorities who were involved in the Peters-Hamlin matter. That was refused the opportunity. The subpoena was vacated. What I'm saying to this court is there is a very different manner in which the disciplinary authorities in Connecticut handle discipline depending upon who the attorney is. Whether it occurs before them, the conduct that Ms. Peters was involved in occurred in courts in New York. This is a reciprocal discipline matter. It's an entirely different ... It's just nothing at all comparable. Well, I do agree with you that there was nothing whatsoever comparable about the charges and the claims that were made with regard to her because there was a clear record of it. However, when you juxtapose the conduct that she engaged in that resulted in discipline ... I'd rather be you than her. Let me just say that. Well ... There's just no comparison. There is a problem for an attorney who is repeatedly prosecuted and then at the end of the prosecution, it's decided, oh, mistaken identity. You got the wrong attorney. That is the very kind of action that the Button Court decided would have or could have a chilling effect. I see your point. I do. I'm just not sure you've got enough of a track record there to reach the level of overcoming younger. Well ... If not a couple of cases. When you say a couple of cases, you mean with regard to other individuals? No, I mean with regard to you. Well, another example that I could point out to the court is that even with regard to the At the time of the probable cause hearing and even before, the disciplinary authorities sought to get me to voluntarily agree to a suspension and use for comparative purposes a Caucasian male attorney who had five presentments, three suspensions, and a reprimand. When I had nothing before me other than that one pleading violation found by Judge Meyer, what could be considered to be good faith in seeking a suspension for me under those circumstances? We have to stop now. You've had many more minutes than ... Thank you, Your Honor. You've reserved two minutes for rebuttal. We'll hear from the government. Good morning, Your Honors. Mitt Michael Skold on behalf of the defendants in this case. May it please the court. Your Honors, the only issue that's before the court today is the younger abstention issue. I haven't seen the complaint that Ms. Miller filed yesterday, but the only question that you have to decide is whether the district court properly dismissed on younger abstention grounds. This is a classic younger abstention case. The defendants received two different ... There were two disciplinary proceedings. One of them is over, the one from Judge Meyer. The other one is still pending. In that one, the defendants received two referrals from two different judicial tribunals. They received a grievance complaint from an independent grievance panel. They received a probable cause finding from a different independent grievance panel. Those submissions and plaintiff's allegations make clear that all they did was carry out their statutory duty to process and pursue the grievance in accordance with state law. That's classic ongoing state disciplinary proceedings that federal review is barred by younger. Now, the plaintiff has raised a number of issues, and I think I've addressed them all in my briefs. I did just want to touch on one, and that's the requirement under younger abstention that the plaintiff has an adequate opportunity to raise her federal claims in the state proceeding. I'm guessing that that's what the lawsuit that she filed yesterday relates to. She absolutely does, has, and will have opportunities to raise her federal claims in the state proceeding. The first step in the process is once a grievance complaint is filed, she has an opportunity to file a written response. She can raise whatever defenses she wants, make whatever arguments she wants, and put in whatever documents she wants. All of that is part of the record. If probable cause is found, the matter then goes to the reviewing committee, which is a three-member panel of the broader statewide grievance committee. They have a full evidentiary hearing. She can make arguments, present evidence and witnesses. If discipline is ordered or a presentment is ordered from the reviewing committee, she can seek review of that from the full statewide grievance committee. The practice book expressly authorizes the grievance committee to review for constitutional error. In this case, there was a presentment ordered in the pending disciplinary proceeding, and so once that review from the grievance committee happens, the next step is to go to a presentment in front of the superior court judge. That's a de novo proceeding. There will be a formal complaint. She can file a formal answer, raise whatever defenses she wants, put in whatever evidence she wants. There will be a full evidentiary hearing in front of a state court judge. That judge has the authority and the ability to address the exact arguments that she's made to the district court. I think what she's contending is that it's the subjugation of her to the process, making her go through the process that has the risk of a constitutionally chilling effect. I understand that, Your Honor. That's the bad faith issue. There's the two issues. What I think in her filings later in front of this court to supplement the record, that goes to whether she had an opportunity to raise these issues, which she does. The bad faith argument I think I've addressed in my brief, Your Honor. The bad faith exception only applies if the people who bring and initiate the proceeding are motivated by bad faith. The defendants in this case did not bring the proceeding. The Danbury grievance panel did. So the exception just doesn't have any application at all. Even if these defendants' motivations were relevant to the bad faith exception under Younger, the district court properly concluded that there were no factual allegations of bad faith and that any notion of bad faith is utterly implausible in light of the fact that the defendants were simply responding to two referrals from judicial tribunals and a grievance complaint filed by an independent grievance panel and a probable cause finding by another independent grievance panel. So the notion that there was bad faith here I think is utterly false. There's no basis for it in the complaint. It doesn't apply. And I think I've addressed all the issues in my brief, so unless the court has any questions, I rely on my brief and ask the court to affirm the judgment. Thank you, counsel. Ms. Miller, you reserved two minutes for rebuttal. Just briefly, Your Honor. I think it is important for the court to look at the fact that prior to any discipline action, I had served for 35 years in multiple courts, federal courts, state courts with a spotless record, and I am not one to lightly talk about my accomplishments. But 35 years of no misconduct, no allegations even of misconduct, and then we had this referral from Judge Meyer, which I believe was the catalyst for all that happened subsequent to that The defendants in this case obviously are not in agreement with that, and they obviously are not admitting to such motivation. But I would like this court, as you ponder your decision in this, to look at the citation in the brief to language by one of our state supreme court justices, Carmen Espinoza. It's rare that you get an insight into the thought processes of judges, particularly supreme court judges, about how they make decisions. However, Judge Espinoza, in a case called LaPointe v. Commissioner of Correction, she said this, that it was very telling regarding the kind of decision making that we can expect from the Connecticut appellate courts. And I'm talking the supreme court, but also the appellate courts. These are the words that she used. She says, you'll see sleight of hand. You'll see shell games. You'll see made-up rules. This is how she characterized the decision-making process in our Connecticut appellate courts. I think that this is important for this court to look at and to carefully examine the examples that I was able to provide to the court regarding the disparity in treatment, all stemming from this catalyst of my complaint of racial discrimination. A 35-year spotless history, and now what we see happening by the disciplinary authorities and the courts in Connecticut is what happens classically in anti-discrimination litigation. And I believe that I can talk about it because I've done that for 37 years now. During which this conspiracy didn't effectuate itself until Judge Meyer's referral. Well, until I spoke out on this matter of racial discrimination in the way that African-American attorneys are denied pay. That's when all of this began. And I think that the court should look at that in terms of analyzing, was there bad faith? Was there a false narrative that is now being put forth? This is what happens in anti-discrimination litigation that I'm familiar with is the employers, respondents, begin to create a paper trail for the action that they later want to take. There's so many people involved here. There's different judges and different committees. They're all involved in this scheme? I think that the court may be underestimating the homogeneity of thought among those who are in the legal system. In fact, I wrote and attempted to write an amicus brief on that in support of an African-American male attorney on the idea that people want you to think in one way. And when you do not think in that way. For example, when you're doing civil rights litigation, you're not making friends in the establishment. And so it is not far-fetched for this court to understand that the local grievance panels don't operate on their own. The disciplinary authority, the chief disciplinary authority, doesn't operate on their own. The Bar Council for the Statewide Grievance Committee does not operate on his own. I say it with no hesitation that I have been singled out in ways that you would not see Caucasian attorneys singled out for discipline. This is where we'll have to stop, although you're a very compelling speaker. Thank you, Your Honor. We'll reserve decision. Thank you.